**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**MARGO G.**,[1]

Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,

Defendant.

Case No. 3:20-cv-01002-IM

**OPINION AND ORDER**

Kevin Kerr, Kerr Robichaux & Carroll, P.O. Box 14490, Portland, OR 97293. Attorney for Plaintiff.

Katherine B. Watson and Sarah Elizabeth Moum, Office of General Counsel Social Security Administration, 701 Fifth Ave., Ste. 22, Seattle, WA 98104; Renata Gowie, U.S. Attorney's Office District of Oregon, 1000 SW Third Ave., Ste. 600, Portland, OR 97204. Attorneys for Defendant.

**IMMERGUT, District Judge.**

Plaintiff Margo G. seeks review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") pursuant

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

to the Social Security Act. For the following reasons, this Court AFFIRMS the Commissioner's decision.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

If the evidence is "susceptible to more than one rational interpretation," the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on April 9, 1963. AR 104. Her relevant past work included office manager, beauty shop manager, barber, hair stylist, receptionist, and phlebotomist. AR 34. Plaintiff alleges disability related to various physical and mental conditions including osteoarthritis, fibromyalgia, colitis, and depression. AR 28. Her current claim was protectively filed on February 3, 2017. AR 25. The claim was first denied on March 28, 2017, and, upon reconsideration, on May 25, 2017. *Id*. Plaintiff requested review of these denials, and the Administrative Law Judge ("ALJ"), S. Pines, held an administrative hearing on October 18, 2018. *Id.* On February 27, 2019, the ALJ issued a decision denying Plaintiff's application for benefits, finding that she was not disabled from October 14, 2015 (the alleged onset date) through June 30, 2016 (the date last insured). AR 27. The Appeals Council declined review on April 16, 2020. AR 1. Plaintiff then appealed to this Court.

Previously, Plaintiff had protectively filed an application for benefits on December 21, 2012. AR 76. ALJ Cecilia LaCara denied her application for benefits on October 13, 2015. AR 90. On November 23, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 97.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953–54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 14, 2015. AR 27.

At step two, the ALJ found the following severe impairments: "osteoarthrosis, fibromyalgia, colitis, and depression." AR 28.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

The ALJ then determined Plaintiff's RFC. *Id.* The ALJ found her capable of performing light work as defined in 20 CFR 404.1567(b), except that:

> [She] can stand and walk for a combined total of six hours and can sit for six hours; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally reach overhead and frequently reach in all other directions; can frequently handle and finger; should not have concentrated exposure to extreme temperatures, vibration, or hazards; and is limited to simple, routine work, in a workplace with no more than occasional workplace changes.

AR 29–30.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 34.

At step five, the ALJ considered the claimant's age, education, work experience, and RFC, and concluded that jobs exist in significant numbers in the national economy that Plaintiff could perform. AR 35. The ALJ relied on vocational expert testimony to find Plaintiff capable of other work, identifying the representative occupations of pricer, office helper, and production assembler.[2] *Id.* Finally, the ALJ found that Plaintiff has not been under a disability from October 14, 2015, the alleged onset date, through June 30, 2016, the date last insured. AR 36.

**DISCUSSION**

Plaintiff raises a single issue for this Court's review: whether the ALJ erred by rejecting the opinion of Dr. Aaron A. Brown, D.O., Plaintiff's treating source physician. ECF 21 at 3. As

---

[2] An ALJ may rely on the Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2, or on the testimony of a vocational expert. *Tackett*, 180 F.3d at 1101. "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

explained below, the ALJ reasonably evaluated Dr. Brown's medical opinion and properly rejected the opinion based on contradictory evidence contained in the record.

**A. Dr. Brown's Opinion**

According to Dr. Brown, Plaintiff could only lift or carry less than ten pounds occasionally or frequently, and could only stand or walk less than two hours, total, in an eight-hour day (up to twenty minutes at one time). AR 1793. Dr. Brown also found that Plaintiff could only sit up to four hours per day (up to two and a half hours at one time). *Id.* Dr. Brown noted that during the time Plaintiff was not capable of sitting, standing, or walking, she would need to be reclining or laying down. *Id.* Dr. Brown found that Plaintiff could climb, kneel, crouch, crawl, and reach occasionally, and could balance, stoop, and bend frequently. *Id.* He indicated Plaintiff was unable to complete even simple work tasks for 20 percent of the work week due to attention and concentration deficits. AR 1794. Plaintiff would need to be absent from work at least 16 hours per work month because of her mental health problems and the pain associated with her colitis and tendonitis. *Id.*

**B. Analysis of the ALJ's Decision**

Plaintiff claims that the ALJ erred when it rejected the August 2018 opinion of Dr. Aaron A. Brown, D.O., Plaintiff's primary care provider. ECF 21 at 4. While Dr. Brown's evaluations noted significant physical and mental limitations, this Court agrees with the ALJ's decision finding that Dr. Brown's opinion was inconsistent with Plaintiff's daily activities. AR 33. Plaintiff's daily activities included caretaking responsibilities and the completion of household chores. Specifically, Plaintiff testified that her grandson lived with her since his birth in

September 2015, and that she was his primary caregiver.[3] AR 30–31, 49. She reported she received some help with these activities from her husband. AR 261, 268–69. However, Plaintiff's husband became ill in 2015 with progressive dementia, requiring her to care for him as well. AR 30, 498–99, 1401. Although Plaintiff received some help twice per week from a home health aide to assist in caring for her husband, she was primarily responsible for the caretaking of her husband. AR 31, 498–99.

An ALJ rejecting the opinion of a treating or examining physician must provide clear and convincing reasons for the decision. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even when a treating or examining physician's opinion is contradicted by the opinions of other treating or examining physicians, an ALJ still must provide "specific and legitimate reasons" to reject that opinion, "supported by substantial evidence in the record." *Id.* at 830–31. The ALJ must consider not only the physician's clinical findings and interpretation of test results, but also his subjective judgments. *Id.* at 833. While the ALJ is not required to discuss each piece of medical evidence, *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)), the ALJ must explain why he or she rejects significant probative evidence, *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

The Ninth Circuit has recognized a proper basis for discounting a treating physician's opinion when the claimed restrictions are inconsistent with the level of activity engaged in by a claimant. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) ("[T]he restrictions appear to

[3] Plaintiff noted her daughter also helps with cleaning and caretaking for her grandson, but she is still the child's primary caregiver. *See* AR 261.

be inconsistent with the level of activity that [the defendant] engaged in by maintaining a household and raising two young children, with no significant assistance from her ex[-]husband."). Like the claimant in *Rollins*, Plaintiff did not receive significant assistance in maintaining a household and providing care to family members. Yet the treating doctor assigned restrictions "so extreme as to be implausible." *Id.* Plaintiff's objection boils down to a claim that the ALJ erred by rejecting her claim without including specific details about Plaintiff's caregiving activities.[4] ECF 21 at 5–6.

In support of her argument, Plaintiff cites *Trevizo v. Berryhill*, in which the Ninth Circuit found that the ALJ failed to provide "specific and legitimate" reasons for rejecting the physician's opinion because the ALJ did not sufficiently detail the extent of the plaintiff's childcare activities and how that undermined the claimed limitations. 871 F.3d 664, 676 (9th Cir. 2017). However, *Trevizo* is distinguishable from the facts here. In that case, the Ninth Circuit chided the ALJ for failing to provide detail about the plaintiff's regular childcare activities. This included the extent and frequency with which the plaintiff did things like pick up, bathe, and play with the children she was caring for. *Id.* The only details that the ALJ in *Trevizo* did account for were "one-off events" like the plaintiff taking the children to the doctor's office which did not speak to the limitations at issue. *See id.* The court also noted that the ALJ failed to inquire whether the plaintiff cared for the children alone or with the assistance of others. *Id.*

Contrary to Plaintiff's assertion here that the ALJ "did not include any specific details about Plaintiff's caregiving activities," ECF 21 at 6, the ALJ detailed the numerous tasks that Plaintiff was responsible for. This included doing most of the family's meal preparation, and

---

[4] This error is supposedly harmful, because the ALJ did not present Dr. Brown's assessed limitations to the vocational expert. *Id.* at 8.

taking care of laundry, pet care, and other household chores like cleaning. *See* AR 33. The ALJ also noted that despite the claimed limitations, Plaintiff could ride a bicycle and "knew exercise was good for her, but [explained that] . . . the primary impediment was a *lack of time* due to her caregiving responsibilities." *Id.* (emphasis added).

Despite Dr. Brown's opinion that Plaintiff could not perform simple work tasks 20 percent of the time and would need to miss 16 hours of work per month, the record demonstrates that Plaintiff was able to meet the significant responsibilities that came with providing care not only to herself but two other family members. Plaintiff successfully completed primary caretaking activities for a young child (7 days a week) and an adult suffering from progressive dementia (5 or more days a week) with little outside help. These caretaking activities were substantive, and it would be odd for a person with such marked limitations to keep up with such a rigorous routine. As the record notes, Plaintiff did "everything" for her grandson, including waking him, brushing his teeth, dressing him, and preparing meals. ECF 22 at 3 (citing AR 261–62). She was even able to pick up her grandson several times per day even though he weighed 21 pounds—more than twice the lifting limit identified by Dr. Brown. AR 664. Similarly, she notes that her husband "cannot cook, drive [or] pay bills." AR 261.

Plaintiff acknowledges that the record contains life activities that would appear to contradict the claimed limitations. However, she argues that the mere existence of these activities means little without additional context. For example, she explains that the sole fact that she is able to ride a bicycle does not contradict Dr. Brown's opinion because the ALJ did not detail how often and how long she engaged in this activity. ECF 21 at 7. This line of argument is not well taken. The ALJ did not reject Plaintiff's claim based on an analysis of a few isolated life activities. At its core, Dr. Brown's opinion involves Plaintiff's ability to sustain physical activity

over a period of time. And each of the significant caregiving responsibilities that fill Plaintiff's daily schedule—when considered in their totality—present a contradiction. It is difficult for this Court to imagine, and Plaintiff has failed to adequately explain, how it would be possible to keep up with her current schedule when her ability to sit, stand, and walk are so drastically limited. Thus, even if the ALJ did not go into granular detail about the specifics of each individual activity, taken together, these numerous activities provide a legitimate basis for the ALJ to reject Dr. Brown's opinion. This Court does not read *Trevizo* as requiring an ALJ to exhaustively chronicle a plaintiff's daily activities minute by minute. As the court in *Trevizo* noted, one of the fundamental errors in the ALJ's decision was not that there was just a mere dearth of information. Rather, the error was attributable to the fact that the ALJ provided "*no details* as to what [the plaintiff]'s regular childcare activities involved." *Trevizo*, 871 F.3d at 676 (emphasis added).

Within this district, courts applying *Trevizo* have cautioned against such an expansive reading of the case. For example, in *Marcus P. v. Comm'r, Soc. Sec. Admin.*, No. 6:19-CV-0003-HZ, 2020 WL 5866323 (D. Or. Sept. 29, 2020), the plaintiff claimed that the ALJ should have developed the record pertaining to his childcare responsibilities before using these activities as a basis to deny his claim. The court rejected this argument, finding that "[u]nlike *Trevizo*, where there was no evidence of what the claimant's childcare activities involved that could undermine the claimant's physical limitations, Plaintiff creating a routine for the children, taking them to school, caring for the kids all day and getting them to bed at night, and taking the children to all their doctor and dentist appointments contradicts Plaintiff's assertion that he is so limited by his psychological impairments that he cannot understand and carry out simple instructions." *Id.* at *5 (internal quotation marks and citation omitted); *see also Starlyn B. v. Comm'r, Soc. Sec. Admin.*,

No. 6:17-CV-1897-SU, 2019 WL 4786959, at *7 (D. Or. Mar. 22, 2019), report and recommendation adopted, No. 6:17-CV-01897-SU, 2019 WL 4786047 (D. Or. Sept. 29, 2019) (noting that the plaintiff's reliance on *Trevizo* was "misplaced" and that "unlike *Trevizo*, the ALJ relied on more than plaintiff's childcare activities to discount plaintiff's symptom allegations, and the specific demands of plaintiff's childcare activities were detailed in the record").[5] *Trevizo* simply asks that when daily activities are used to reject a disability claim, "specific details" about those daily activities should be given. *Trevizo,* 871 F.3d at 676. A lack of specific detail is not at issue here and Plaintiff's reliance on *Trevizo* is misplaced.

Plaintiff also claims that the ALJ should not have placed so much reliance on evidence of her daily life activities because they were performed in a home environment—rather than a competitive work environment—and are not equivalent. ECF 21 at 6. Citing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014), Plaintiff claims that the ALJ was required to account for the differences in these two environments. ECF 21 at 6. In *Garrison*, the Ninth Circuit explained that "[m]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* at 1016 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The court found that the plaintiff's "ability to talk on the phone, prepare meals once or twice a day,

[5] Here, the facts also differ from the cases within this district where *Trevizo*'s reasoning was used as a basis for remand. For example, in *Alicia D. v. Kijakazi*, No. 3:20-CV-01222-SB, 2022 WL 891786 (D. Or. Mar. 3, 2022), report and recommendation adopted, No. 3:20-CV-1222-SB, 2022 WL 888297 (D. Or. Mar. 25, 2022), the plaintiff suffered from post-traumatic stress disorder symptoms which notably impaired her interpersonal and emotional abilities. *Id.* at *6. The ALJ discounted the plaintiff's testimony because it was inconsistent with activities like taking her son to the library or archery range. *Id.* The Court found that the ALJ should not have relied on activities that were so solitary in nature—since it is unlikely that the plaintiff would have interacted with other people in these circumstances. *See id.* Here, unlike in *Alicia D.*, Plaintiff's daily activities bear a more direct connection to Plaintiff's claimed limitations.

occasionally clean [her] room, and, with significant assistance, care for [her] daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day," was not evidence sufficient to reject the plaintiff's testimony. 759 F.3d at 1016.

But like *Trevizo*, Plaintiff's reliance on *Garrison* is also distinguishable. The court in *Garrison* noted that the plaintiff required considerable help from her mother, was often unable to engage in activities due to pain, and typically required rest after carrying out minimal activities. *Id.* at 1015–16. Here, Plaintiff's activities were far more "robust than the 'minimal, punctuated activities'" at issue in *Garrison*. *See Starlyn B.*, 2019 WL 4786959, at *7. As already explained above, there is little evidence in the record that Plaintiff's daily life activities required minimal effort or that her significant caretaking responsibilities could not have been accomplished without help.

Accordingly, this Court finds that the ALJ did not err when she identified specific inconsistencies between Plaintiff's daily activities, on the one hand, and the extreme limitations Dr. Brown assessed, on the other. Combined with Plaintiff's caregiving activities and housekeeping tasks, her frequent exercise via both walking and bicycling is not consistent with an inability to stand or walk longer than 20 minutes at a time or less than two hours of a workday. AR 1793. Further, although Dr. Brown opined that Plaintiff could lift less than ten pounds, *id.*, the record shows Plaintiff was able to lift her 21-pound grandson several times per day, AR 664, 1257, 1267. Plaintiff was also able to launder clothes, handle cookware, and shop for groceries, among other activities. AR 33, 254–55, 261–63. It was reasonable, then, for the ALJ to reject Dr. Brown's opinion.

**CONCLUSION**

The Commissioner's decision denying Plaintiff's application for disability benefits is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 12th day of July, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge